**STATE of Iowa, Appellant,**

v.

**Larry J. FOSTER, Appellee.**

No. 84–33.

Supreme Court of Iowa.

Oct. 17, 1984.

Thomas J. Miller, Atty. Gen., Mary Jane Blink, Asst. Atty. Gen., and Timothy J. Gallagher, Asst. County Atty., for appellant.

Kim J. Keuter and Russell A. Neuwoehner, Dubuque, for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ and WOLLE, JJ.

SCHULTZ, Justice.

The sole issue raised by this appeal is whether "sex act," as the term is used in the definition of prostitution in Iowa Code section 725.1 (1983), includes the act of manual masturbation of a male. The defendant Larry J. Foster was charged with this offense after he allegedly approached an undercover female police officer and stated he wanted a "hand job" for $15. A "hand job" is common street language for manual sexual stimulation of the male genitalia.

The district court sustained defendant's motion to dismiss the information relying on our construction of the term "prostitution" in *State ex rel. Clemens v. ToNeCa, Inc.*, 265 N.W.2d 909, 913 (Iowa 1978). In 1976 ToNeCa had been enjoined from operating its massage parlors under statutes which prohibited maintaining places used for prostitution because its female masseuses masturbated males with their hands. *Id.* at 912. Since no statutory definition of prostitution was in effect at that time, we referred to our previous adoption of the common law definition of prostitution, "the act or practice of a female in offering her body to indiscriminate intercourse with men" as narrowed by statute "to outlaw and punish only sexual intercourse for pecuniary gain." *Id.* at 913 (citing *State v. Willis*, 218 N.W.2d 921 (Iowa 1974); *State v. Price*, 237 N.W.2d 813·(Iowa), *appeal dismissed*, 426 U.S. 916, 96 S.Ct. 2619, 49 L.Ed.2d 370 (1976)). In *ToNeCa* we declined the opportunity to expand that definition to include manual masturbation. 265 N.W.2d at 913. The district

court relied upon statements made in *ToNeCa* when we defined prostitution under the 1973 Code and referred to the definition of "sex act" in the newly adopted 1977 Code: "It [the 1977 Code] defines 'sex act' to include sexual intercourse and certain sodomitic and homosexual activities, but the definition does not include masturbation by hand." *Id.*

The State correctly points out that the quoted language is not binding on us because the meaning of our present statutes was not an issue in *ToNeCa*. To sustain a claim of binding precedent a case must be interpreted in reference to an involved question which necessarily must be decided. *Brady v. Welsh*, 200 Iowa 44, 48–49, 204 N.W. 235, 236–37 (1925). The issue in *ToNeCa* was confined to the common law definition narrowed by statute rather than the present statutory definition. The opinion concerning the meaning of the present section was given in the setting of a general discussion and is not binding authority or precedent within the *stare decisis* rule. 21 C.J.S. *Courts* § 190(a) (1940). We must examine anew the meaning of the statutes in the context of the present case.

Prostitution is defined in Iowa Code section 725.1 (1983) as follows: "A person who sells or offers for sale his or her services as a partner in a sex act, or who purchases or offers to purchase such services, commits an aggravated misdemeanor." Sex act is defined in Iowa Code section 702.17 (1983) as:

> any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person or by the use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

The State asserts that hands may constitute a substitute for a sexual organ, here a vagina, citing *State v. Whetstine*, 315 N.W.2d 758 (Iowa 1982). In *Whetstine* we held that sexual abuse could be committed by digital penetration of the female genitalia when a finger is used as a substitute for a sexual organ, a penis, or as a substitute for an artificial sexual organ. *Id.* at 761, 763.

This issue is one of statutory construction. The ultimate goal in interpreting statutory language is to ascertain and give effect to the intention of the legislature. *Kohrt v. Yetter*, 344 N.W.2d 245, 246 (Iowa 1984); *State v. Whetstine*, 315 N.W.2d 758, 760 (Iowa 1982). When construing a statute, "we must look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved, and place on it a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it." *Shidler v. All American Life & Financial Corp.*, 298 N.W.2d 318, 321 (Iowa 1980) (quoting *Chicago & North Western Railway v. City of Osage*, 176 N.W.2d 788, 792 (Iowa 1970)).

The statutory definition of "sex act" does not specifically speak of a hand as a sexual organ; however, the State points to the term "substitutes" as the controlling word. In *Whetstine* we defined the word "substitutes" as used in the definition of "sex act" in Iowa Code section 702.18, the sexual abuse statute. 315 N.W.2d at 761. In so doing, however, we provided the logic for our definition by referring to the emphasis or purpose of the charging statute in that case, the sexual abuse statute, which required the commission of a sex act as an element of the offense. *Id.* Thus, we examined its purpose by turning to its ultimate use and concluded the emphasis in a sexual abuse charge was on the forcible nature of the assault. *Id.* Obviously, the charging statute in the present case, the prostitution statute, does not have the same purpose. We conclude that *Whetstine* requires an inquiry into the purpose of the prostitution statute to aid our interpretation here.

Clearly the purpose of section 725.1 is to prohibit the commercial exploitation of sexual gratification. In the present case defendant allegedly sought to pur-

chase the services of an undercover police-woman for sexual gratification. That human hands were to be substituted for a sexual organ as the instrument used to achieve this state is not significant under Iowa Code section 702.17; however, this situation falls squarely within the purpose of section 725.1. Under the facts presented in this case, a "hand job" may constitute a "sex act" for the purpose of a prosecution under section 725.1. The district court erred in dismissing the charge. Therefore, we reverse and remand for further proceedings.

REVERSED AND REMANDED.