APPEL, Justice (dissenting).
I respectfully dissent.
First, in parts of the majority opinion, the generic label "due process" is used to describe the plaintiff's claim. The plaintiff, however, seeks to raise two distinct claims under the due process rubric in this appeal.
The first claim relates to vagueness. The plaintiff claims the statute is so vague that a reasonable person cannot comply. Second, he claims that because marijuana metabolites stay in the system for many days long after any impairment in driving, the statute violates substantive due process in seeking to criminalize such conduct. I find the first issue related to fair notice troubling, while the second issue has not been preserved for our review.
On the fair notice issue, the majority cites *260 State v. Bock , 357 N.W.2d 29, 33-34 (Iowa 1984) (en banc), for the proposition that the statute here is not void for vagueness. In Bock , we upheld a proscribed threshold for operating a vehicle while intoxicated contained in Iowa law. See id. We noted,
Although persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should, in the exercise of reasonable intelligence, understand what type of conduct places them in jeopardy of violating the statute. We believe a realization of this potential jeopardy of violating the statute is sufficient to satisfy the requirements of due process.
Id. at 34. I agree with the result, and even the reasoning, in Bock . But the issue here is different. The average person who goes to a bar and consumes a number of alcoholic beverages in a few hours knows, or should know, of the jeopardy. Better not drive. Take a taxi. Go home and sleep it off. But most people of average intelligence do not know that inactive marijuana metabolites stay in a user's system for days after any potential impairment has vanished.
Indeed, casual marijuana users of ordinary intelligence would be shocked to learn that many days after use and long after any impairment, they might be found intoxicated under the statute because of very small amounts of an inactive marijuana metabolite remaining in the system even though their driving was unimpaired by the past marijuana use. A person who has had a few drinks before driving knows of the risk of alcohol-based intoxication, but does not know of the jeopardy posed by ingesting marijuana many days before.
The majority suggests there are protections against arbitrary enforcement because there must be a valid stop and then a valid reason for a urine sample. Of course, anyone can be stopped any time for some kind of traffic violation. That is little protection.
Nonetheless, before a urine sample is obtained, ordinarily there must be probable cause or reasonable suspicion to support the draw. But that is not always the case. The presence of marijuana metabolites in urine might be discovered in cases involving an accident in which the driver is hospitalized and standard medical tests are undertaken. See, e.g. , Iowa Code § 147A.8(1) (2017); see also id. § 321J.7 (providing for medical testing of unconscious persons or persons incapable of consent or refusal to determine presence of alcohol or controlled substances). In short, the majority's ruling that arbitrary enforcement is not a problem under the statute should be considered limited to the facts of this case and not a blanket blessing under the statute.
On the issue of substantive due process, I have serious doubts on the merits. See State v. Childs , 898 N.W.2d 177, 196-201 (Appel, J., dissenting). But the issue has not been preserved. Meier v. Senecaut , 641 N.W.2d 532, 537-40 (Iowa 2002). Only the question of fair notice was presented to, and ruled upon, by the district court.[3] I thus would not address the issue.
*261 But the use of an overbroad irrebuttable presumption that the presence of a trace of marijuana metabolite in the urine automatically means that the driver was impaired by marijuana is simply irrational. It is defended on the ground that there is no more accurate urine test and that more accurate testing would be too expensive. Think about that proposition. The science behind urine testing is not very accurate, but it satisfies due process, apparently, because it is cheap and leads to more convictions, many of which may apply to people that have not been driving while impaired by the use of marijuana. Because of the poor fit between a trace of metabolite in the urine and the purpose of the statute on punishing impaired drivers, the statute strikes me as presenting a substantive due process problem. State v. Hernandez-Lopez , 639 N.W.2d 226, 238 (Iowa 2002).

The parties agreed to consider the due process issue at the close of the State's evidence. The defendant raised the issue during consideration of the jury instructions. In objecting to the proposed jury instruction, the defendant stated that "we're still relying on the issue that the Iowa Code 321J.2(1) is unconstitutionally vague as it applies to defendant in violation of the due process clause of the Fourteenth Amendment to the United States [Constitution] and Article I, Section 9 of the Iowa Constitution, that being the implied consent and the two-hour time span and the presence of any amount of controlled substance in a person's urine or blood can amount to operating while intoxicated." The district court overruled the objections.